**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION, | No. 22-15584 |
| *Plaintiff-Appellee,* | D.C. No. 2:20-cv-00040-KJM-AC |
| v. | |
| VITOL INC.; FEDERICO CORTEGGIANO, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted February 14, 2023
San Francisco, California

Filed August 18, 2023

Before: Eric D. Miller, Gabriel P. Sanchez, and Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Miller

## SUMMARY[*]

### Federal Energy Regulatory Commission / Statute of Limitations

The panel affirmed the district court's order denying Vitol, Inc.'s motion to dismiss, as untimely under the applicable statute of limitations, a complaint filed by the Federal Energy Regulatory Commission (FERC) that sought an order affirming the assessment of a civil penalty against Vitol and one of its traders, Federico Corteggiano, for making unlawful manipulative trades in the California energy market.

When FERC believes that it has identified a violation of the Federal Power Act, 16 U.S.C. §§ 791a–828c, it initiates an administrative process that may culminate in a decision to assess a civil penalty, and must bring an action in federal district court to enforce that decision. Under the applicable statute of limitations, 28 U.S.C. § 2462, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." Thus, FERC must bring an action in federal district court for an order enforcing the assessment of a civil penalty within five years of "the date when the claim first accrued."

In measuring the limitations period, the critical question is when FERC's claim "accrues." Vitol contended that FERC's federal district court action was untimely because

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

FERC's claim accrued as soon as the allegedly unlawful trading occurred. The panel rejected Vitol's contention, and held that FERC's claim accrued on the date that FERC assessed a civil penalty. The panel reasoned that FERC's claim arises under 16 U.S.C. § 823b(d)(3)(B), which gives the agency a cause of action in federal court for "affirming the assessment of the civil penalty," and that claim does not accrue until FERC has assessed a penalty.

The panel also agreed with the district court's conclusion that FERC's administrative process for assessing a civil penalty is itself a "proceeding" that is subject to the five-year statute of limitations in 28 U.S.C. § 2462, and therefore FERC must initiate the proceeding by issuing a notice of proposed penalty within five years of any alleged wrongdoing.

## COUNSEL

Matthew D. McGill (argued), Helgi C. Walker, Jessica L. Wagner, and Jeff Liu, Gibson Dunn & Crutcher LLP, Washington, D.C.; Charles R. Mills, Bracewell LLP, Washington, D.C.; Paul J. Pantano Jr., and Abigail L. P. Edwards, Willkie Farr & Gallagher LLP, Washington, D.C.; for Defendants-Appellants.

Kevin M. Dinan (argued), Nickolas Barber, Catherine C. Collins, John R. Matson III, Mark Koehn, Jennifer Vein, Beth G. Pacella, and Robert H. Solomon; Damon W. Taaffe, Enforcement Counsel; Jeremy Medovoy, Deputy Director, Office of Enforcement; Geo F. Hobday Jr., Director, Investigations Division; Federal Energy Regulatory Commission, Washington, D.C.; for Plaintiff-Appellee.

Todd Mullins and Noel H. Symons, McGuireWoods LLP, Washington, D.C; Matthew A. Fitzgerald, McGuireWoods LLP, Richmond, Virginia; for Amici Curiae Edison Electric Institute, Electric Power Supply Association, and Energy Trading Institute.

Andrew R. Varcoe and Tyler S. Badgley, U.S. Chamber Litigation Center, Washington, D.C.; Michael L. Spafford, Michael F. Murray, and Robert M. Overing, Paul Hastings LLP, Washington, D.C.; for Amicus Curiae The Chamber of Commerce of the United States of America.

## OPINION

MILLER, Circuit Judge:

When the Federal Energy Regulatory Commission (FERC) believes that it has identified a violation of the Federal Power Act, 16 U.S.C. §§ 791a–828c, it initiates an administrative process that may culminate in a decision to assess a civil penalty. To enforce that decision, FERC must bring an action in federal district court "for an order affirming the assessment of the civil penalty." *Id.* § 823b(d)(3)(B). Such an action must be brought within five years of "the date when the claim first accrued." 28 U.S.C. § 2462. This case presents the question whether that five-year period runs from the date of the alleged wrongdoing or instead from the date when FERC assesses a penalty. We conclude that FERC's claim does not accrue—and thus the limitations period does not begin to run—until the agency assesses a penalty.

I

The Federal Power Act makes it unlawful "for any entity . . . to use or employ, in connection with the purchase or sale of electric energy . . . , any manipulative or deceptive device or contrivance." 16 U.S.C. § 824v(a); *see also* 18 C.F.R. § 1c.2(a). If FERC believes that a person has violated that prohibition, it may initiate administrative proceedings by issuing an order to show cause and notice of proposed penalty. *See* 16 U.S.C. § 823b(d)(1); 18 C.F.R. §§ 385.209(a)(2), 385.1506. At that point, the respondent may choose to proceed in one of two ways specified in paragraphs (d)(2) and (d)(3) of 16 U.S.C. § 823b.

First, under section 823b(d)(2), the respondent may elect an on-the-record hearing before an administrative law judge. 16 U.S.C. § 823b(d)(2)(A). FERC may then review the administrative law judge's decision. 18 C.F.R. §§ 385.711–.712. And the respondent may seek direct review of an adverse final determination in the appropriate court of appeals. 16 U.S.C. § 823b(d)(2)(B).

Second, a respondent may elect to proceed under section 823b(d)(3). That provision simply commands FERC to "promptly assess [a] penalty, by order." 16 U.S.C. § 823b(d)(3)(A). But by regulation, FERC may assess a penalty only after an adversarial proceeding. *See* 18 C.F.R. §§ 385.1506–.1507; *see also id.* § 385.2201 (describing the proceeding as "contested [and] on-the-record"). In that proceeding, the respondent must file an answer disputing relevant points of law and fact. *Id.* § 385.213(c)(1)(i)–(ii). The respondent may also submit affidavits and other evidence. *Id.* § 385.213(c)(4). At the conclusion of the proceeding, FERC may decide to assess a penalty. If it does

so, and "if the civil penalty has not been paid within 60 calendar days," then FERC

> shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, such assessment.

16 U.S.C. § 823b(d)(3)(B).

Whichever procedural path the agency follows—whether under paragraph (d)(2) or paragraph (d)(3)—once the penalty becomes "final," and if the respondent has yet to pay, FERC is authorized to "institute an action to recover the amount of such penalty in any appropriate district court of the United States." 16 U.S.C. § 823b(d)(5).

In this case, FERC alleges that Vitol Inc., an energy-trading company, and one of its traders, Federico Corteggiano, (collectively, Vitol) made unlawful manipulative trades in the California energy market by selling power at a loss in order to inflate the value of derivatives that it held, thereby avoiding a larger loss on its derivatives position. Corteggiano had previously carried out a similar scheme while employed at Deutsche Bank; in that case, Deutsche Bank ultimately agreed to pay a substantial civil penalty and disgorge its profits from the trade. *Deutsche Bank Energy Trading, LLC*, 142 FERC ¶ 61,056 (2013). This time, FERC says, the scheme helped Vitol avoid more than $1 million in losses.

The trades in question took place on October 25 and 28, 2013. FERC spent three years investigating, and in December 2016 it sent Vitol a letter sharing its preliminary findings of wrongdoing. In June 2017, FERC and Vitol agreed to extend the statute of limitations by one year. Then, on July 10, 2019, FERC issued a formal order to show cause and notice of proposed penalty.

Vitol elected to proceed under section 823b(d)(3) and filed an answer to FERC's notice. On October 25, 2019, FERC issued an order assessing a penalty against Vitol in the amount of $1,515,738 and against Corteggiano in the amount of $1,000,000, and it also ordered disgorgement of certain profits. The penalty went unpaid, and on January 6, 2020, FERC filed a complaint in federal court for an order affirming the assessment of the penalty.

Vitol moved to dismiss the complaint, arguing that FERC's action was untimely. Because the Federal Power Act does not contain its own statute of limitations, FERC's penalty enforcement proceedings are subject to the general statute of limitations set out in 28 U.S.C. § 2462, which provides, with exceptions not relevant here, that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."

Vitol contended that FERC's claim accrued as soon as the allegedly unlawful trading occurred, so the action in federal court was untimely. FERC, by contrast, argued that its claim accrued only once the statutory prerequisites for filing suit were satisfied. According to FERC, section 2462 creates "two clocks." First, the agency must issue a notice of proposed penalty within five years of alleged wrongdoing.

(Here, the notice came just under *six* years after the alleged wrongdoing, but as noted, Vitol had agreed to a one-year extension of the limitations period.) When FERC ultimately assesses a penalty, the agency says, its claim to affirm that penalty accrues, thus beginning a second five-year interval in which to file a complaint in federal court.

The district court agreed with FERC and denied the motion to dismiss in relevant part. The district court held that FERC's administrative proceeding was itself a "proceeding" under section 2462, such that FERC needed to commence it within five years of the alleged wrongdoing (six years, under the parties' agreement), and that FERC timely did so. The district court further held that FERC's claim in federal court for "an order affirming the assessment of the civil penalty," 16 U.S.C. § 823b(d)(3)(B), did not accrue until FERC had concluded the administrative proceeding. As the district court saw it, FERC "can have no 'complete and present cause of action' seeking review or affirmation of a civil fine under the [Federal Power Act] until FERC has first assessed that fine through its administrative process." (quoting *Gabelli v. SEC*, 568 U.S. 442, 448 (2013)).

The district court certified the statute of limitations issue for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted permission to appeal. Our review is de novo. *Mendez v. Ishikawajima-Harima Heavy Indus. Co.*, 52 F.3d 799, 800 (9th Cir. 1995).

II

We begin with the text of section 2462. *See Hall v. United States Dep't of Agric.*, 984 F.3d 825, 837 (9th Cir. 2020). To reiterate, that statute provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained

unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462.

In measuring the limitations period, the critical question is when FERC's claim "accrues." In general, a claim accrues when it "come[s] into existence as an enforceable claim or right." *Accrue*, Black's Law Dictionary (11th ed. 2019). As the Supreme Court has explained, "it is 'the standard rule that [accrual occurs] when the plaintiff has a "complete and present cause of action,"' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (alteration in original) (quoting *Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)); *see Clark v. Iowa City*, 87 U.S. (20 Wall.) 583, 589 (1874) ("All statutes of limitation begin to run when the right of action is complete.").

FERC's claim arises under 16 U.S.C. § 823b(d)(3)(B), which gives the agency a cause of action in federal court for "*affirming* the assessment of the civil penalty," *id.* (emphasis added). A cause of action for that purpose does not exist until FERC has assessed a civil penalty. Only then does the cause of action accrue, so only then does the statute of limitations begin to run.

Vitol insists that FERC's claim is not for enforcement of a penalty but rather "for a substantive violation of the [Federal Power Act's] anti-manipulation provision and FERC's corresponding anti-manipulation rule," and therefore it must accrue as soon as any alleged wrongdoing occurs. In support of that theory, Vitol observes that the action in federal court does not involve record review of FERC's decision to impose a penalty; instead, the court considers de novo whether a penalty is warranted. Additionally, Vitol points out that a different provision, 16

U.S.C. § 823b(d)(5), gives FERC a cause of action to "recover" civil penalties that have become "final." According to Vitol, only an action under *that* provision depends on the assessment of an earlier penalty.

But no matter how one conceptualizes the essential nature of FERC's claim, there is no getting around the text of section 823b(d)(3)(B). FERC's action seeks an "order affirming the assessment of the civil penalty." 16 U.S.C. § 823b(d)(3)(B). Until there is a civil penalty, a cause of action for affirming the penalty cannot exist. The claim becomes complete and present only upon the conclusion of the administrative proceeding.

That conclusion is reinforced by the next sentence of section 823b(d)(3)(B). Yes, as Vitol emphasizes, it says that the court shall "review de novo the law and the facts." But it also says that the court "shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, such assessment." All of those actions—"enforcing," "modifying," and "setting aside"—have as their object the agency's assessment. Until the assessment has been issued, there is nothing for the court to do.

As for section 823b(d)(5), that provision gives FERC a way to collect a final judgment affirming a penalty "[i]f any person fails to pay" it. The statute supplements the Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101-647, Tit. XXXVI, 104 Stat. 4933, by imposing upon FERC a duty to bring a collection action ("the Commission shall institute an action") when a penalty becomes final and making clear that the defendant in such an action may not collaterally attack the assessment ("the validity and

appropriateness of such final assessment order or judgment shall not be subject to review").

On Vitol's telling, section 823b(d)(5) does something more: it creates the Federal Power Act's sole action for "penalty recovery." Because section 823b(d)(5) is an action for penalty recovery, the argument goes, section 823b(d)(3)(B) cannot also create an action for "penalty recovery." But our analysis does not depend on whether section 823b(d)(3)(B) creates an action for penalty recovery. The question that matters is whether the cause of action in section 823b(d)(3)(B)—for an "order affirming the assessment of the civil penalty"—can exist before FERC has assessed a penalty, and the statute plainly indicates that it cannot.

Vitol cites *Gabelli v. SEC* in support of its view that a claim always accrues as soon as the alleged wrongdoing occurs. 568 U.S. 442 (2013). *Gabelli* involved a civil action by the SEC against an investment adviser who allegedly defrauded his clients. *Id.* at 445–46. The question before the Supreme Court was whether the statute of limitations begins to run when the fraud occurs or instead when it is discovered, possibly years later. The Court declined to apply a discovery rule. Instead, following the "'standard rule' that a claim accrues 'when the plaintiff has a complete and present cause of action,'" the Court held that the five-year clock under section 2462 "begins to tick . . . when a defendant's allegedly fraudulent conduct occurs." *Id.* at 448 (quoting *Wallace*, 549 U.S. at 388).

Crucially, the statute in *Gabelli* permitted the SEC to bring suit as soon as the fraud occurred, without undertaking any prior administrative action. 15 U.S.C. § 80b-9(e)(1). Congress may, if it chooses, authorize an agency to

prosecute a violation by filing suit in federal court in the first instance. As *Gabelli* underscores, when Congress makes that choice, the agency's cause of action will generally accrue as soon as the violation occurs. But in the Federal Power Act, Congress made a different choice. FERC may go to federal court for an order "affirming the assessment of the civil penalty" only *after* the agency has assessed such a penalty in an agency proceeding. 16 U.S.C. § 823b(d)(3)(B). That cause of action does not exist until the agency assesses a penalty.

To be sure, the accrual of a claim does not always have to await the satisfaction of every procedural obstacle to filing suit. In *Soto v. Sweetman*, for example, we held that a prisoner's action under 42 U.S.C. § 1983 accrued when his injury occurred, even though he could not go to court until he exhausted his administrative remedies as required under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1977e(a). 882 F.3d 865, 870–71 (9th Cir. 2018). But we did not alter the rule that a cause of action accrues when it is "complete and present," *Wallace*, 549 U.S. at 388, that is, when "the substantive elements of the cause of action on which the suit is based" have matured, *3M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994) (citation omitted). Before the PLRA was enacted, it was well established that a cause of action under section 1983 accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981); *see McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (holding that an "accrual analysis" under section 1983 begins with "'the specific constitutional right' alleged to have been infringed" (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017))). The PLRA did not change that preexisting cause of action but merely added a procedural

prerequisite to filing suit: "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1977e(a).

Section 823b(d)(3)(B) differs because it does not add a procedural prerequisite to a cause of action that has been created elsewhere. Instead, it defines FERC's cause of action in the first instance and provides that FERC may seek "an order affirming the assessment of the civil penalty." That cause of action cannot be complete until the agency has assessed the penalty.

III

Vitol contends that our interpretation of section 2462 is anomalous because it creates more than one statute-of-limitations clock for FERC—one for the administrative proceeding, and another for an action in court. In fact, our decision is consistent with decisions of other courts interpreting statutes of limitations in similar contexts.

The Supreme Court has long recognized that a statute of limitations can create one limitations period for the claim before the agency and a second for a follow-on federal court action. In *Crown Coat Front Co. v. United States*, the Court considered whether the statute of limitations applicable to a contract claim against the government begins to run as soon as the claimant suffers an injury or only after he receives a decision from the agency to which he must first present the claim. 386 U.S. 503 (1967); *see* 28 U.S.C. § 2401(a). The Court held that the cause of action in court does not accrue until the agency "finally rule[s]," so the limitations period applicable to that action does not begin to run until then. *Crown Coat*, 386 U.S. at 522. The Court reasoned that "[t]he focus of the court action is the validity of the administrative

decision. Until that decision is made, the contractor cannot know what claim he has or on what grounds administrative action may be vulnerable." *Id.* at 513–14.

In *United States v. Meyer*, the First Circuit applied that logic in considering the application of section 2462 to penalty recovery actions by the Department of Commerce under the Export Administration Act of 1979, Pub. L. No. 96-72, 93 Stat. 503. 808 F.2d 912 (1st Cir. 1987). Under that statute, just as under the Federal Power Act, the agency first had to assess a penalty and then bring suit in federal court to enforce it, at which point the court reviewed the penalty de novo. *See* 50 U.S.C. app. § 2410(f) (1982). The court embraced what it called "the obvious proposition that a claim for 'enforcement' of an administrative penalty cannot possibly 'accrue' until there is a penalty to be enforced." *Id.* at 914. Other courts have reached similar conclusions. *See United States v. Godbout-Bandal*, 232 F.3d 637, 640 (8th Cir. 2000) (applying *Meyer* to conclude that an FDIC penalty enforcement action does not accrue, for purposes of section 2462, until the "administrative process has resulted in a final determination"); *accord SEC v. Mohn*, 465 F.3d 647, 654 (6th Cir. 2006); *cf. United States Dep't of Lab. v. Old Ben Coal Co.*, 676 F.2d 259, 261 (7th Cir. 1982) (expressing a similar view in dicta).

So far as we are aware, only one court of appeals has taken a contrary view. In *United States v. Core Laboratories, Inc.*, the Fifth Circuit relied on the legislative history of the Export Administration Act to conclude that, under that statute, "the time is reckoned from the commission of the act giving rise to the liability, and not from the time of imposition of the penalty." 759 F.2d 480, 482 (5th Cir. 1985) (quoting S. Rep. No. 89-363, at 7 (1965)). We agree with the First Circuit's criticism of the reasoning in *Core*

*Laboratories*. *See Meyer*, 808 F.2d at 915; *id.* at 916 ("Outside of the Fifth Circuit, no court has ever held that, in a case where an antecedent administrative judgment is a statutory prerequisite to the maintenance of a civil enforcement action, the limitations period on a recovery suit runs from the date of the underlying violation as opposed to the date on which the penalty was administratively imposed."). In any event, even accepting that decision at face value, its reasoning was limited to the particular statute at issue in that case, so it has little bearing on an action under section 823b(d)(3)(B).

Of particular relevance here, the Fourth Circuit—the only court of appeals to confront the precise question presented in this case—has held that that FERC's cause of action under section 823b(d)(3)(B) accrues when FERC concludes its administrative proceeding and assesses a penalty. *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 899 (4th Cir. 2020). The court explained that "Congress plainly conditioned FERC's right to bring an action in federal district court on the occurrence of a number of statutorily-mandated events," including giving notice of a proposed penalty, completing the administrative process, and issuing a penalty assessment order. *Id.* at 898–99. Only upon the "satisfaction of these requirements," the court reasoned, "did Congress direct that FERC 'shall institute an action' in federal district court. . . . And only then did § 2462's statutory limitations period for filing suit commence." *Id.* at 899 (quoting 16 U.S.C. § 823b(d)(3)(B)). We agree.

IV

The district court concluded that FERC's administrative process for assessing a penalty is itself a "proceeding" that

is subject to the five-year statute of limitations in section 2462. Vitol devotes much of its brief to attacking that conclusion, arguing that FERC's process for assessing a penalty is an "invented," "ministerial" exercise on which the running of a statute of limitations for the subsequent action in court cannot depend.

No one questions that FERC commenced its administrative process against Vitol within six years of the violation (the five-year statutory period, plus the year of tolling to which the parties agreed). So, as far as Vitol is concerned, FERC's administrative penalty assessment was timely regardless of whether that process needed to comply with section 2462. But Vitol nonetheless argues that the penalty assessment process is not a "proceeding." Vitol apparently believes that if we recognize the process for the "ministerial" affair it really is, we will see that FERC's reading of section 823b(d)(3)(B)—and FERC's contention that its cause of action in district court does not accrue until the administrative process concludes—produces "absurd and unfair" consequences.

Vitol highlights two such alleged consequences: first, that FERC would make the running of the statute of limitations hinge on nothing more than an earlier "prosecutorial determination[]" to propose a penalty, *Meyer*, 808 F.2d at 920, and second, that FERC's position will allow the agency to "postpone indefinitely" its action in district court, *McMahon v. United States*, 342 U.S. 25, 27 (1951). But whatever one thinks of the administrative process leading up to the agency's assessment of a penalty, the text of section 823b(d)(3)(B) makes clear that FERC's cause of action in court does not accrue until that process culminates and FERC assesses a penalty. Vitol's argument is really just that our interpretation will result in bad policy consequences,

and that argument cannot overcome the clear meaning of the statutory text. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("[N]o amount of policy-talk can overcome a plain statutory command."). Instead, "[o]ur only job today is to give the law's terms their ordinary meaning." *Id.*

In any event, even taking Vitol's concerns on their own terms, we find them unpersuasive. To start, in evaluating FERC's show cause proceeding, we focus on the process as specified in FERC's regulations. *See* 18 C.F.R. § 385.213 (procedures governing evidence and filings); *id.* §§ 385.2201–.2202 (conflict-of-interest rules). Vitol asks us to consider only the statute, emphasizing that section 823b(d)(3) says little about what kind of process the agency must undertake. But another provision of the Federal Power Act specifically authorizes FERC to make rules governing "[a]ll hearings, investigations and proceedings." 16 U.S.C. § 825g(b); *see also id.* § 825h (authorizing FERC to make "such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of" the Federal Power Act). FERC's regulations about its own proceedings are not "irrelevant," as Vitol argues, but rather "a matter of congressional design." *Powhatan Energy*, 949 F.3d at 900.

Under the regulations, the issuance of a notice of proposed penalty and order to show cause "initiate[s] a proceeding." 18 C.F.R. § 385.209(a)(2). Section 823b(d)(2) allows the respondent to elect a hearing before an administrative law judge—which even Vitol acknowledges would be a "proceeding." If the respondent instead elects to proceed under section 823b(d)(3), it must provide an "answer" that notes "[a]ny disputed factual allegations" and "[a]ny law upon which the answer relies." 18 C.F.R. § 385.213(a)(1), (c)(1)(i)–(ii). The respondent must also "include documents that support the facts in the answer in

possession of, or otherwise attainable by, the respondent." *Id.* § 385.213(c)(4). Here, for example, Vitol filed a 96-page answer, accompanied by nearly 100 pages of exhibits. Those materials are then reviewed by FERC Commissioners who are subject to rules aimed at guaranteeing their neutrality and independence. For example, regulations bar off-the-record communications about a matter between any party and the personnel at FERC who are charged with assessing a penalty. 18 C.F.R § 385.2201(b). And regulations also prohibit any FERC employee involved in the investigation from "participat[ing] or advis[ing] as to the findings, conclusion or decision, except as a witness or counsel in public proceedings." *Id.* § 385.2202.

Vitol levels various critiques against the process specified in FERC's regulations—including under the Due Process Clause, although it does not argue either that a due process violation occurred here or that the Due Process Clause requires any particular interpretation of the statute of limitations. But for present purposes, it suffices to observe that the agency's process under its regulations fits comfortably within the ordinary meaning of "proceeding," that is, "[a]ny procedural means for seeking redress from a tribunal or agency." *Proceeding*, Black's Law Dictionary (11th ed. 2019); *see Capozzi v. United States*, 980 F.2d 872, 874 (2d Cir. 1992) (holding that section 2462 applies to "adversarial adjudication, be it administrative or judicial"). Indeed, it is difficult to describe the particular sequence of events that takes place before the agency without using the word "proceeding" or some other closely related word: FERC's regulations call it a "proceeding," 18 C.F.R. § 385.209(a)(2); even Vitol calls it a "process"; and throughout this opinion we have referred to it as a

"proceeding"—not in an effort to be tendentious, but simply because that is by far the most natural word to use.

For those reasons, FERC's administrative proceeding to assess a penalty is much more than merely a prosecutorial determination. And because it is indeed a "proceeding" subject to section 2462, FERC must initiate it by issuing the notice of proposed penalty within five years of any alleged wrongdoing.

To be sure, the Federal Power Act does not fix the length of the administrative proceeding itself; the statute requires only that after the notice of proposed penalty issues and the respondent elects to proceed under section 823b(d)(3), "the Commission shall *promptly* assess such penalty, by order." (emphasis added). But FERC nevertheless has ample incentive to act promptly. For one thing, delay may impede FERC's ability to prove its case when a court conducts de novo review of the penalty assessment. For another, the Administrative Procedure Act authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). When an agency "fail[s] to take a discrete agency action that it is required to take"—such as assessing a penalty promptly—an aggrieved respondent can seek an order compelling it to act. *Norton v. Southwest Utah Wilderness All.*, 542 U.S. 55, 64 (2004). In sum, FERC must commence any enforcement proceedings within five years, and it must assess a penalty promptly thereafter. Vitol is therefore without basis in arguing that our interpretation of the statute will give FERC "the choice to 'postpone indefinitely' its federal court action." (quoting *McMahon*, 342 U.S. at 27).

Vitol is correct to point out that FERC retains some ability to determine when the statute of limitations for an

action in court begins to run. But given the "complexity of the subject matter and proceedings under FERC's charge," *Powhatan Energy*, 949 F.3d at 900, it is unsurprising that Congress designed the statute to give the agency the necessary time to "investigate and to uncover" violations of the Federal Power Act. *Id.* at 905. Depending on the nature of investigation, FERC's enforcement staff may need to await permission from the Commission before issuing subpoenas. And after the agency issues subpoenas, it may need to go to district court if a respondent refuses to comply. *See* 16 U.S.C. § 825f(b)–(c); 18 C.F.R. §§ 385.409, 385.411(a)(1). Had Congress limited FERC to five years in which to investigate, assess a penalty, *and* bring suit, respondents would have "considerable incentive to employ the available procedures to work delay." *Powhatan Energy*, 949 F.3d at 900 (quoting *Meyer*, 808 F.3d at 919).

**AFFIRMED.**